## Parker's Appeal.*
## Mayor, Aldermen and Citizens of Philadelphia's Appeal.*

Under the Act of 3d February 1824, the taxes, rates and levies assessed on real estate in the city and county of Philadelphia, are a lien on such estate from the date of their assessment, and have priority to mortgages and other incumbrances charged on such estate prior to their assessment.

A relinquishment of a distress made by a collector for taxes assessed under that Act, on the goods of a tenant lying on the premises charged with the tax, does not release the priority of the lien of the tax in favour of other lien creditors.

*It seems* it would, if the goods were the property of the owner of the estate charged with the tax.

*Quære,* whether in the latter case, it would not entirely discharge the estate from the lien of the tax.

The provisions of the Act of 3d February 1824 do not apply to State taxes assessed under the Act of 11th June 1840.

THESE were appeals severally by I. B. Parker and the Mayor, Aldermen, and Citizens of Philadelphia, from the decree of the District Court for the city and county of *Philadelphia*, confirming the report of an auditor, allowing out of the proceeds of a sheriff's sale of certain real estate the amount of county and poor taxes for the year 1842, and disallowing the amount of city taxes for the same year.

The fund in question was raised by the sale, in two distinct parcels, of a lot of ground with the buildings thereon, on Chesnut and Ninth streets, in the city of Philadelphia, under a purchase money mortgage given to Parker in 1835 by the late Judge Barnes. Parker was the purchaser at the sale. It appeared that in April 1836, Judge Barnes conveyed to Nathan Dunn the whole of the mortgaged premises. In August 1841, Dunn conveyed to the American Philosophical Society part of the mortgaged premises, being the building and lot called the Philadelphia Museum. Between the 3d and 7th April 1843, while the museum building was

---

* This case was argued at March Term 1844.

the property of the American Philosophical Society, the collector of South Ward levied there for a city tax of $192 and costs, on the personal property of Dunn, who then occupied part of the building as tenant of the Society. Dunn owned the goods and chattels on the premises at that time, excepting the museum collection, which was the property of the museum company, who then occupied another part of the building as tenants of the Society. During the years 1842 and 1843, there had been personal property on the premises worth $2000, exclusive of the museum collection. On the 6th April, after a request by the agent of Dunn and the museum company for a stay of proceedings, and a communication from a committee of the Philosophical Society, the collector gave his agent a written order to stay proceedings in the case, and not to advertise till further notice. Nothing was afterwards done in the matter.

Parker claimed the fund on account of his mortgage. The other claims were for state, county, city and poor taxes, for the year 1842, under the 1st and 8th sections of the Act of 3d February 1824, *Purd.* (1841) 212; the 7th section of the Act of 5th March 1828, *Purd.* (1830) 751; and the Act of 11th June 1840, *Purd.* (1841) 986. In opposition to these claims, Parker contended that personal property was, by analogy to the rule in case of executions, the primary fund for the payment of taxes, and must be exhausted before the real estate can be resorted to. That the collector of the tax having made a levy, could not abandon it to the prejudice of other parties. That no lien could exist unless recorded. That no lien could be claimed for the State tax.

The auditor was of opinion that under the Act of 1824 both real and personal property were rendered liable, without any provision as to the order in which such liability was to be enforced. That the 1st section provided for a general lien on real estate in the city and county of Philadelphia, without requiring a previous resort to personal property. That the provisions of the 4th section as to the entry of taxes in the register were directory, and the lien would not be invalidated by any omission in this respect. *Pennock* v. *Hoover*, (5 *Rawle* 317). That the Acts of 1824 and 1828 only required that the tax, when assessed, should be lawfully assessed to make it a lien. That the collector was not authorized to suspend indefinitely proceedings already commenced against personal property, which would have sufficed for the payment of the tax, and then resort to the real estate: and his laches was to be deemed evidence of a waiver of the lien as against third parties. That the provisions of the Act of 1824 did not extend to the State tax assessed under the Act of 11th June 1840.

On these grounds the auditor awarded payment of the county and poor taxes, and excluded the claims for State and city taxes. The court below confirmed the report. From this decree Parker

and the Mayor, Aldermen and Citizens of Philadelphia, now appealed.

*T. I. Wharton*, for the appellant, Parker, to show that the lien for the city taxes was discharged by the neglect of the collector to take the personal property, cited *Commonwealth* v. *Vanderslice*, (8 *Serg. & Rawle* 452); *Commonwealth* v. *Haas*, (16 *Ib.* 252); *Quinn* v. *Wallace*, (6 *Whart.* 452, 458); *Hunt* v. *Breading*, (12 *Serg. & Rawle* 37, 40); 2 *Saund. R.* 47, note; *M'Cormick* v. *Miller*, (3 *P. R.* 230); 7 *Taunt.* 56. He also referred to Act of 3d February 1824, *Purd.* (1841) 212; *Burd* v. *Ramsay*, (9 *Serg. & Rawle* 109).

*Olmsted*, for the Mayor, &c., referred to the 6th section of the Act of 1824, as giving a tenant who pays the taxes a right to recover the same from the owner of the land; and to *Fleming* v. *Beaver*, (2 *Rawle* 132), as to the subrogation of the tenant to the right of the party to whom the tax was coming.

The opinion of the Court was delivered by

KENNEDY, J.— The view taken by the auditor in his report, which was approved and confirmed by the court, of the several claims to the fund in question, appears to be correct, excepting as to the claim of the Mayor, Aldermen and Citizens of Philadelphia for taxes, amounting to $192, beside interest due thereon. This claim, as also all the other claims to the fund, the whole whereof was claimed by Mr Parker under a mortgage which he held upon the property, from a judicial sale of which the fund was raised, was resisted by his counsel on the ground that the several claims, though regularly assessed on the property sold as taxes, never became liens on it, because not registered for non-payment in due time in the commissioners' office of the county of Philadelphia. It is argued that the registry is the only thing required to be done by the Act of the 3d February 1824, that is calculated to give publicity to the existence of the assessment, and that to considei the bare assessment of the tax a lien on the estate intended to be charged with it, before a registry made thereof for non-payment, would be to create and establish secret liens, which could not have been intended by the Legislature, as they would inevitably produce great mischief as well as injustice. It is alleged that the assessment itself is comparatively a secret act, as it is not required to be entered in any book of registry or record, to which recourse is or may be generally had by the public for information; and hence to construe the Act as making the tax a lien upon the estate from the date of the assessment, would be giving to it an operation contrary to the judicial policy of the state, founded upon principles of both expediency and justice.

This course of reasoning, though in some degree plausible, is not

properly applicable to the case so as to sustain the construction of the Act of the 3d February 1824, contended for by the counsel of Mr Parker. For in the first place the assessment of the tax cannot well be regarded as a secret act, which any one interested in knowing whether it exists or not may not inform himself of, if he will only take the trouble of making inquiry at the proper source. It is made by officers who are known and publicly appointed for the purpose; and by them committed to writing in such manner as to show the estate on which it is intended to be charged, with its date and amount. It is, therefore, in the power of every person to inform himself fully in regard to every assessment of a tax, as soon as made, by calling on those who have made it, or who may be in possession of their proceedings in respect to it, which are always committed to writing as evidence of what has been done. A lien, therefore, created by the bare assessment of the tax, cannot be considered such a *secret* lien as will be likely to work any serious mischief or injustice to any one, from his want of knowledge in regard to it, provided he will only resort to the proper sources of information which it is in his power at all times to ascertain with certainty.

But we are of opinion, in the second place, that to give to the Act the construction contended for by Mr Parker's counsel, would be contrary to both the letter and meaning of it. The Act in terms declares that " all taxes, rates and levies, which may hereafter be lawfully imposed or assessed, to be applied for any purposes, either in the city or county of Philadelphia, on real estate situate in the said city and county of Philadelphia, shall be and they are hereby declared to be a lien on the said real estate, on which they may hereafter be imposed or assessed;" and again, that " the said lien shall have priority to, and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility, which the said real estate may become charged with or liable to, from and after the passing of this Act." From the letter of the Act it is perfectly clear that the tax, when legally imposed or assessed, becomes a lien instantly upon the estate charged with it; but that is not all, for it is further expressly declared, that such lien shall have priority to and be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation, or responsibility, which the estate may have become charged with after the passing of the Act, though prior to the assessment of the tax. This latter provision of the Act, giving the lien of taxes assessed subsequently a preference to prior mortgages or other incumbrances, shows very clearly that the registry of the tax and its non-payment, directed by the Act to be made in the commissioners' office, was not required or directed to be made for the benefit or advantage of the owners of the prior incumbrances, as it is plain it could not have availed them anything to have acquired a knowledge of the existence of the tax by means

of such registry. Every man taking a mortgage or other incumbrance, as a security for the payment of money, upon real estate situate within the city and county of Philadelphia, or in either, is bound to know that he takes his mortgage, or other incumbrance, subject to the future assessment of such taxes as are in question here, and he must therefore take his chance as to the result, as it is impossible for him to know it beforehand. The exigencies of the public cannot be told always before they exist; but when they arise, it is right and often indispensably necessary that they should be met and removed, though it may operate to the prejudice of private individuals. Private interest must yield to that of the public, the latter being of much greater importance than the former. If the tax were not to be considered a lien upon the estate from the date of its assessment, nor until the collector shall endeavour and fail to collect it and make a return thereof as uncollected to the commissioners of the county to be by them registered as directed by the Act, the owners of real estates, in many instances, might have it in their power to sell the same, and thereby prevent or defeat the collection of the tax. The Legislature certainly never intended that this should be the case, but on the contrary framed the Act with a view to prevent everything of the sort, and to secure the payment of the tax in every possible event, so far as it might be practicable to obtain the same out of the estate itself, by making the tax a lien thereon from the date of its assessment.

But the counsel of Mr Parker contend further that even admitting that the city tax became a lien on the property intended to be charged with it immediately upon its being assessed, the lien ceased or was discharged by the subsequent distress made by the collector for the tax on Nathan Dunn's personal property, which was found at the time on the property charged with the tax. Nathan Dunn, though he had been the owner of the property charged, had parted with his right to it the year preceding the assessment of the tax, to the American Philosophical Society, who were the owners of it at the times of the assessment and distress respectively, and stood in the relation of landlords to Mr Dunn, who had become their tenant as to that part of the premises charged with the tax, in which his personal property distrained on was found. Had the property distrained on been owned at the time by the American Philosophical Society, there would be great force in the argument of the counsel of Mr Parker, that the lien of the tax on the real estate ought to be considered as thereby discharged, seeing the distress was voluntarily abandoned and given up by the collector. Though the distress of itself cannot be considered either a discharge or satisfaction of the tax, yet where the property distrained on belongs to the owner or owners of the estate assessed, the distress may be regarded as an additional security obtained from the real debtor for the payment of the tax

or debt, and a voluntary relinquishment of it by the collector as the agent of the creditor or body corporate to whom the debt or tax when collected may be coming, might perhaps, in equity at least, be considered a release of the lien in favour of the owners of all other existing liens. This, however, is not the case before us, and I do not, therefore, wish to be understood as giving any decisive opinion on it. Here the real estate charged may be looked on as standing in the place of the owner, and regarded as the real debtor, and bound both in law and equity for the payment of the tax; and although the goods of a tenant or of a stranger found on the premises charged with the tax, may be distrained on at law for the tax, and if taken and applied to that end, a remedy by action at law is given to him by the Act of Assembly to obtain redress of the owner of the premises charged, still that does not appear to be a sufficient reason why he should be deprived of every equitable principle or consideration that otherwise might be brought to bear in his favour. Equity may well consider the tenant or stranger whose goods have been distrained on and appropriated to the payment of the tax, in the light of a surety; and as such entitled to be substituted to the rights of the party to whom the tax was coming. It has been contended that the goods or personal property, even of the tenant or a stranger, found on the real estate or premises charged with the tax, is the fund in law that ought and must be first resorted to in order to obtain payment of the tax, and in this respect has been compared to the ordinary case of a common debtor, against whose personal estate, if he has any, the creditor must first proceed to obtain payment of his debt before he can go against the real estate. There is certainly no *imperative* direction to this effect given by the Act of Assembly prescribing the manner in which the tax shall be collected by the collector. The words of the 6th section of the Act of the 3d February 1824, which relate to this point, are, " that all collectors, &c. shall be and they are hereby *authorized* and *empowered*, (not *required*, it must be observed), at any time when the same may be found on the estate on which such taxes, &c. may be due, to levy upon any goods, chattels, or personal property, which may be found thereon; and to sell and dispose of the same, after ten days' notice of such sale, &c." But in the case of proceeding to collect an ordinary debt, the creditor is expressly prohibited from taking the real estate of his debtor in execution, as long as he has goods or personal property which may be seized and taken for that purpose. The two cases, therefore, are different; so that a fair conclusion as to the law in the one, might be erroneous in the other. There is nothing equitable in making the goods of the tenant or of a stranger liable to the payment of a tax due on the real estate, whereon they may happen to be found. It is founded on a principle of expediency, or perhaps in some measure necessity, for the purpose of rendering the collection of the

tax as certain as possible, so that the body corporate or body politic, on whose behalf it has been assessed, may not suffer for the want of it. But if the tenant or stranger is in effect compelled to pay the tax, it is highly equitable that he should be permitted to take the place of the party to whom the tax was due, and be substituted to all the rights of the same. Be this, however, as it may, it would not seem to be right to allow any other than the party to whom the tax is owing, to insist upon the sale of the goods of the tenant or a stranger after being distrained on by the collector; and in case the collector refuses or declines to do so by giving them to the tenant or stranger again, or permitting him to take and dispose of them to his own use, it would appear to be highly unjust, if not iniquitous, to hold that the lien of the tax was thereby released and gone as against those who had no right whatever to interfere in the matter.

We, therefore, think that the court below erred in rejecting the claim of the Mayor, Aldermen and Citizens of Philadelphia, for a tax due to them, and in refusing to allow it to be paid with the interest due thereon, out of the fund in that court, and accordingly reverse their decree in this respect, and decree that the amount of said tax together with the interest due thereon, and the costs which have accrued in the case, be paid out of said fund to the Mayor, Aldermen and Citizens of Philadelphia; and that the residue of the decree of said court be affirmed with the costs to be paid by Mr Parker, if the fund in court should be insufficient for that purpose after paying the Mayor, Aldermen and Citizens of Philadelphia the amount of their claim.