## Perry *versus* Brinton.

The lien of a mortgage, which is the first incumbrance on the premises, except taxes, is *not* destroyed by a sheriff's sale, under a judgment obtained for taxes *subsequently* assessed. The lien of such mortgage is preserved by the acts of 6th April, 1830, and 11th April, 1835.

The act of 11th April, 1835, does not operate to impair the priority of *lien*, given to taxes, in the county of Philadelphia, by the act of 3d February, 1824.

ERROR to the District Court of *Philadelphia*.

This was a *scire facias* on a mortgage given by William Perry to Sarah Brinton, the testator of the plaintiff, issued in the name of George Brinton, executor of the will of Sarah Brinton *vs.* William Perry and Samuel R. Blair, terre tenant.

The mortgage, in suit, was dated 15th October, 1836, and was recorded on the same day, and was given to secure payment of the mortgagor's bond, in five years from the date.

The terre tenant Blair made defence:

The substance of the defence was, that on the 6th September, 1847, the mortgaged premises were sold by the sheriff of the city and county of Philadelphia, by virtue of an execution upon a judgment, duly obtained on a writ of *scire facias*, issued by the commissioners and inhabitants of the township of Moyamensing, upon a claim duly filed in the said court, against the said William Perry, owner or reputed owner, or whoever may be the owner of the lot of ground therein described, and which was the same in substance as the mortgaged premises for corporation taxes, &c., duly assessed and registered, for the years 1842, 1843, 1844 and 1845, and were purchased by the deponent, who had received a

deed from the sheriff, duly acknowledged, &c.    The District Court gave judgment for the plaintiff below.

The question in the case was of a sheriff's sale of a lot of land in the county of Philadelphia, by virtue of an execution upon a judgment obtained upon a claim duly entered for municipal taxes, and which were assessed subsequent to the mortgage; whether the mortgage on the premises, given since the passage of the act of 3d February, 1824, is discharged.

The claim filed was for corporation taxes, and for conduit laid in front of the mortgaged premises.

Errors assigned:

1. The court erred in rendering judgment for the plaintiff, upon the rule to shew cause why judgment should not be entered for want of a sufficient affidavit of defence.

2. The court below erred in deciding that the mortgage, upon which this suit was brought, continued to bind the property after the sheriff's sale of September 6, 1847.

3. The court below erred in not rendering judgment for the terre tenant, the purchaser at the sheriff sale, upon his affidavit of defence in this case: act of 3d February, 1824, *Purdon* 1112.

Sec. 1. All taxes thereafter assessed on real estate in the city and county of Philadelphia, declared to be a lien on the said real estate. "And the said lien shall have priority to, and shall *be fully paid and satisfied*, before any recognizance, mortgage, judgment, debt, obligation or responsibility which the said real estate may become charged with, or liable to, from and after the passing of this act."

Sec. 8. All the provisions of the act applied to taxes assessed by authority of the city of Philadelphia, or of any corporation in the city or county of Philadelphia, (act of 6th April, 1830, *Purdon* 459,) where lien of mortgage shall be prior to all other liens, except other mortgages, ground rents, and the purchase money due to the Commonwealth, the lien of such mortgage shall not be affected by sale under a *venditioni exponas.*

Sec. 2. Sale under a *levari* upon the mortgage not to destroy the prior lien of any other mortgage.

After the passage of the act of 6th April, 1830, it was ascertained that the protection intended to be given to mortgages by the act of 6th April, 1830, was in some cases illusory, on account of the provision in the act of February, 1824, making taxes a lien; and the act of 11th April, 1835, provided, that no lien created by act of 3d of February, 1824, should be construed to be within the meaning of the act of April 6, 1830, above referred to.

The act of 16th April, 1845, *Purdon* 465, provided, that the provisions contained in the first section of the act to which this is

[Perry *v.* Brinton.]

a supplement, (viz: the act of 6th April, 1830,) shall extend, and shall always be deemed and taken to extend to all cases of sales, made by virtue or authority of *any* writ of execution.

Sec. 4. The lien of a mortgage upon any real estate, situate in the city or county of Philadelphia, shall not be destroyed, or in any way affected by any sale of the mortgaged premises under a subsequent judgment, (*other than one entered upon a claim, which was a lien on the premises prior to the recording of such mortgage,*) by reason of the prior lien of any tax, charge or assessment whatsoever, but the same shall continue as if such prior lien did not exist, and where, by existing laws, the lien of such mortgage would otherwise continue: *Provided,* That the continuance of the lien of such mortgage shall not prevent the discharge of such prior liens for taxes, charges or assessments, by such sale, or the satisfaction thereof, out of the proceeds of such sale.

The sixth section of the act of March 11, 1846, (acts of 1846, p. 115,) provides, that the lien of such claims shall not be divested by any judicial sale, as respects so much thereof, as the proceeds of such sale may be insufficient to discharge and pay.

The District Court, Stroud, J., decided that the lien of the mortgage was not destroyed by the sale.

He observed, *inter alia,* the defence relies entirely upon what is argued to be the proper meaning of the words contained in the parenthesis, (meaning in the 4th section of the act of 16th April, 1845,) namely: "a claim which was a lien on the premises prior to the recording of such mortgage." It is said the expression "the lien prior to the recording of the mortgage, recognizes the *retro-active* effect given by the act of 3d February, 1824, to the imposition of taxes, and therefore as the mortgage of the plaintiff bears date in 1836, the judgment under which the defendant claims, although for taxes not assessed until 1842, is within the exception provided for by the parenthesis, and that a sale, founded upon it, discharges the lien of the mortgage.

But this construction is, I think, plainly against the letter of the exception, and conflicts beyond doubt, not only with the spirit of the entire section, of which the exception forms a part, but is against the whole scope of legislation on the subject, subsequent to the decision of Willard *vs.* Norris, 2 *Rawle* 56, by which it was first authoritatively settled, that a sheriff's sale, under a junior judgment, destroyed the lien of a prior mortgage.

The case was argued by *T. J. Wharton,* for plaintiff in error.— He contended that the mortgage was discharged by the sale; that the lien of taxes was created, not by the filing of a claim, but by the acts of Assembly, 2 *Barr* 224. That the claim, in this case, was therefore a lien, prior to the recording of the mortgage, under the act of 1845.

That if the view, on the other side, be correct, then a mortgage given at the commencement of each year, for the full value of the lot, would prevent any collection of taxes, and that the act of 1824, would be nugatory, if this construction be given to the act of 1845. He cited 5 *Rawle* 317; 8 *W. & S.* 449, Parker's appeal, 2 *Barr* 22. That sale of unseated land for taxes destroys the lien of a mortgage, 5 *Watts* 287, Fager *vs.* Campbell.

*Price,* for Brinton's executor.—That the mortgage was recorded in 1836; the taxes accrued in 1842–'43–'44 and '45, and they could not, in fact, have been liens before they were laid, though when laid, they would be entitled to payment before *subsequent* mortgages; and that upon the construction, that the mortgage was discharged by the sale; the proviso in the fourth section, viz of the act of April, 1845, "that the continuance of the lien of such mortgage, shall not prevent the discharge of such prior liens for taxes, &c., out of the proceeds of such sale," would be without meaning, 8 *Watts* 316, Mix *vs.* Ackla; 7 *Watts* 418, 419; 6 *Wh.* 215. That these acts are to be construed more by their known purpose, than by the letter, 7 *W.* 476, 7 Pierce *vs.* Potter; 6 *Wh.* 215, Berger *vs.* Hiester.

The opinion of the Court was delivered by

BELL, J.—The single question presented by the affidavit of defence is said to be, whether the lien of a mortgage dated and recorded in 1836, is destroyed by a sheriff's sale, made by virtue of a *levari facias*, founded on a judgment recovered for taxes assessed in 1842, and subsequently; there being no other encumbrance on the land sold, prior to the mortgage. The solution of this question depends on the proper construction of several acts of Assembly, which, from time to time, have been made in reference to the subject of liens.

The first of these necessary to be noticed, is the act of February 3, 1824. This not only constituted all taxes assessed upon real estate within the city and county of Philadelphia liens thereon, but also gave them priority and right of payment, in preference to any precedent mortgage or other incumbrance. As the law then stood, this priority of lien worked no other consequence than priority of payment out of the proceeds of the lands, when sold under judicial process; for such a sale, at the time of this enactment, divested all precedent liens, without regard to the period of their origin, Willard *vs.* Norris, 2 *Rawle* 56; Corporation *vs.* Wallace, 3 *Rawle* 109. This continued to be the rule until the act of the 6th April, 1830, *D. D.* 508, which provides that, where "the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and the purchase money due to the Common-

wealth, the lien of such mortgage shall not be destroyed, or in any way affected by any sale made by virtue or authority of any writ of *venditioni exponas.''* Looking rather to the known purpose of the Legislature, to restore what many supposed to be the law of Pennsylvania, before the determination of Willard *vs.* Norris, than to the inefficient language in which that intention was expressed, the courts, by a liberal interpretation, held that the purport of the statute is, to declare that no mortgage, or judgment, shall bind more than the equity of redemption springing from a prior mortgage; and that no more than this shall be sold under the execution of a posterior incumbrancer, Pierce *vs.* Potter, 7 *Watts* 476; Bender *vs.* Hiester, 6 *Wh.* 215. The avowed object of this act, manifested a strong disposition entertained by the law-makers, to protect first mortgagees, against all who should come after them in point of time; and the same disposition has been exhibited more than once since that period. But it appears to have been soon discovered, that the act of 1830 would not avail for the protection of mortgagees in the city and county of Philadelphia, where, under the act of 1824, arrears of taxes took precedence of even first mortgages, and by thrusting them from their position of priority, threatened to render the protecting statute partially nugatory.— To remedy this it was, in substance, declared by the act of 11th April, 1835, that no lien created by virtue of the act of 1824, should be construed to be within the meaning of the act of 1830. Properly understood, this provision appears to be decisive of the pending controversy. It is true, the first section of the act of 1830, speaks, in terms, only of sales by *venditioni exponas,* as incompetent to loosen the grasp of a prior mortgage, and that the sale of the premises here in question, was had under a *levari facias,* after a statutory *scire facias sur.,* the tax claim filed in pursuance of the statutes relating to that subject. But we held in Clark *vs.* Stanley, 10 *Barr* 482, that any form of execution was within the equity of the act. In determining its applicability, the debt to be satisfied is everything; the form of the writ to be employed nothing. Now, here, the debt to be satisfied by sale of the premises, was assessed taxes, created liens by the act of 1824.

But this peculiar lien is expressly excluded by the act of 1835, from contemplation, when considering the operation of the act of 1830 upon the rights of this mortgagee, and consequently, as I understand it, his hold on the land is to be regarded as though the priority of lien given by the older act had no existence. In this point of view then, it can make no difference in the relative rights of the parties, that the land was sold for taxes; for the lien of these must now be regarded as posterior to the mortgage in determining the effect of the act of 1830, upon the mortgage, as a subsisting lien. Until, however, recently, some doubt seems to have existed, whether, under the act of 1830, a first mortgage was

[Perry *v.* Brinton.]

protected, where the sale of the land was effected by some form of execution other than a *venditioni exponas;* or a *levari facias sur.* judgment recovered in a suit upon a subsequent mortgage. This doubt seems to have given birth to the first, fourth and fifth sections of the act of April 16, 1845. Excluding, for the present, from view, the act of April, 1835, the answer given by the plaintiff to the affidavit of defence filed in the cause, may be considered as founded on the fourth section of the latter statute, and its sufficiency is to be determined by the interpretation of the language employed in that section. It ordains, "that the lien of a mortgage upon any real estate, situate in the city or county of Philadelphia, shall not be destroyed, or in any way affected, by any sale of the mortgaged premises under a subsequent judgment, (other than one entered upon a claim *which was a lien on the premises* prior to the recording of such mortgage,) by reason of the prior lien of any tax, charge, or assessment whatever; but the same shall continue as if such prior lien did not exist, when, by existing laws, the lien of such mortgage would otherwise continue: *Provided,* That the continuance of the lien of such mortgage shall not prevent the discharge of such prior liens for taxes, charges, or assessments, by such sale, or satisfaction thereof, out of the proceeds of such sale." It must be confessed, this provision is awkwardly constructed; and yet, when candidly scrutinized, I think it is impossible to misapprehend its meaning. In substance it is: the lien of a mortgage shall not be affected by a sale of the mortgaged premises by reason of the prior lien of any tax, &c., but the same shall continue as if such prior lien did not exist, unless the sale be made under a claim which, in fact, existed as a lien before the mortgage was recorded. The lien contemplated is one which can be ascertained and guarded against by the mortgagee, and not one which is to spring into existence in after years, and by *retroaction,* jostle the mortgage from its conceded place. That was the kind of lien created by the act of 1824, which being found to conflict with the modern policy cherished by the legislature in respect to mortgages, was, doubtless, intended to be altered by this fourth section. If it effected but this, it effected nothing. As was well observed by the plaintiff's counsel, if the parenthetical exception was intended to include posterior assessments to take effect as prior liens, by retrospection, the language would have been "other than a judgment entered on a claim which *has,* or *shall have,* priority of lien over the mortgage;" and not the language employed that was a "lien prior to the recording of the mortgage." Then, too, the saving clause would have been in violent contradiction to the meaning of the whole enactment, and thus, rendered the section a folly. Again, if the construction suggested by the defendant below were adopted, another consequence would be to render the *proviso* of this section meaningless; for why pro-

vide for the payment of liens for taxes out of the proceeds of sale, notwithstanding the continued lien of the mortgage, if all the tax claims that might be sued out take precedence of the older security? A further argument, of the same import, is deduced from the more recent act of March, 11, 1846, (*D. D.* 1060;) the 6th section of which declares "that the lien of such claims shall not be divested by any judicial sale, as respects so much thereof as the proceeds of such sale may be insufficient to discharge and pay;" a provision obviously based upon the concession of some distinct and continuing incumbrance, which might cause the land to sell for less than the taxes assessed upon it. In short, the defendant's construction is, in my apprehension, in violation of the manifest spirit of the section, taken as a whole, and in direct hostility to the course of legislation on this subject. Fager *vs.* Campbell, 5 *Watts* 287, upon which he relied, as in point, was decided upon grounds which have no application to a case resting upon local statutes; and the most that can be said of the act of 23d January, 1849, (*D. D.* 1206,) is that it seems to have been passed to make assurance doubly sure! It is, I concede, more distinctly phrased than the act we have been considering, but is scarcely more definite in its expressed object. It must have been made, *ex majore cautela*, or else, it proposes to make another step in advance by confining the interfering lien to a claim for taxes *duly registered before the mortgage recorded.* Before this act, taxes became a lien from the moment they were assessed, Parker's Appeal, 8 *W. & S.* 449.

Judgment affirmed.