# Anspach and Stanton's Appeal.

112     27|
d 27 SC ²248

1. The Act of April 1st, 1873 (P. L., 509), relating to the lien of taxes on real estate in Delaware county, repeals so much of the Act of February 3d, 1824 (8 Sm. L., 189), as to make the lien of the assessment indefinite in its duration, and limits the lien of the assessment to a period of a year, unless within that time a claim or formal lien shall be entered in the Prothonotary's office of the county.

2. Under the said Act of April 1st, 1873, a prior mortgage will be postponed to the payment of taxes assessed on the mortgaged premises subsequently to the mortgage. That there had been personal property on the premises, out of which the collector might have levied and collected the taxes, is not material, for the lien of the assessment cannot be defeated by the neglect and want of diligence of the collector.

3. What would be the effect of a false return, that there had not been on the premises any personal property out of which the taxes might have been levied and collected, upon the claim filed on such return, in continuance of the lien, is not determined.

February 8th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Delaware county* : Of January Term, 1885, No. 131.

Appeal of William Anspach and M. Hall Stanton from the decree of said court in the distribution of the proceeds of the sheriff's sale of the real estate of Henry C. Eyre, Thomas H. Mirkil, Jr., and William Dougherty.

The following facts appear from the report of the Auditor, J. N. Shanafelt, Esq., appointed by the court to distribute the fund:

On March 7th, 1881, Henry C. Eyre, Thomas H. Mirkil, Jr., and William Dougherty purchased from William Anspach and M. Hall Stanton, the appellants, certain real estate in the

[Anspach and Stanton's Appeal.]

city of Chester, known as the Chester Iron Works, and for part of the purchase money executed a mortgage to Anspach & Stanton for $7,500, which was afterwards reduced by payment to $5,500. This mortgage when it was given was the only lien on the premises, except a prior mortgage, which does not concern the questions in this case. The purchasers, under the firm name of H. C. Eyre & Co., immediately took possession of the premises, and prosecuted the business of iron founders and machinists, which had theretofore been carried on at the same place.

Your Auditor finds that H. C. Eyre & Co. were doing business from the spring of 1881 up to June of 1883, when they made an assignment for the benefit of creditors to William Ward, Esq. On March 7th, 1881, the said firm of H. C. Eyre & Co. gave a mortgage to Anspach & Stanton upon their real estate in the city of Chester, whereon they conducted their business.

On December 1st, 1883, execution was issued upon said mortgage, the property was sold by the sheriff and purchased by said Anspach & Stanton for the sum of $500.

On June 19th, 1882, the council of the city of Chester passed an ordinance, levying the city taxes for 1882. On the same date the school taxes for 1882 were levied. On April 2d, 1883, the city council passed an ordinance levying the city taxes for 1883.

On June 15th, 1883, the school tax rate was laid; on February 27th, 1882, the county commissioners levied the taxes for said year, and on March 7th, 1883, the commissioners levied the taxes for said year.

| The city taxes for 1883 amount to | . | . | . | $101.00 |
|---|---|---|---|---|
| "  county " "    "    "    " | . | . | . | 35.35 |
| "  school. " "  1882  "    " | . | . | . | 84.83 |
| "    "    " "  1883  "    " | . | . | . | 40.40 |

On August 27th, 1883, a lien for city taxes for the year 1882, amounting to $100, was filed by Mr. Henry Abbott, a former collector.

The said lien was accepted by the city of Chester and credit given Mr. Abbott on his account with the city. Your Auditor finds that the city, county and school taxes for the years 1882 and 1883 were duly assessed upon the real estate sold by the sheriff from which the said fund for distribution arose. Your Auditor finds that Ellis Smedley and William Hinkson, on and before the day of the sale, notified the sheriff that these taxes were due and unpaid.

Your Auditor also finds that there was upon the premises of H. C. Eyre & Co., during the time they were conducting their business, personal property ranging in value from $1,500 to $3,000.

There are two kinds of taxes for your Auditor to consider. Those for which no lien has been filed, and those for which a lien was filed.

The city, county and school taxes for the year 1883 are undoubtedly, under the Act of 1873 applying to Delaware county, made a lien upon the real estate for one year. The sale of the lands against which they were a lien took place before the year expired, and as they are divested by the said sale, the fund arising from said sale must certainly be looked to for payment: See Borough of South Chester v. Broomall, 1 Del. Co. Reports, page 58.

The other taxes are the city taxes for the year 1882, for which the collector filed his lien and was exonerated by the city.

It is argued by the counsel for Anspach & Stanton that the collector was bound to go upon the personal property upon the premises for his taxes before filing his lien. The city taxes for 1882 are a lien on the real estate sold under the authority of Treas. of Delaware county v. McClees, 1 Delaware County Reports, 73. By authority of that case though a year may have expired from the time of the levying to the date when the lien was filed, the filing of the claim continues the lien as against the owners, and would only fail as against a purchaser or mortgagee without notice.

It is immaterial whether there was any personal property on the premises out of which the collector could have got his taxes.

The fund in the hands of the assignee could not be looked to for the payment of any of these taxes, for he is not an owner in fee as purchaser, but only a mere trustee. The fee may revert to the assignee: 1 Barr, 104; 1 P. F. S., 204, and 15 P. F. S., 135.

The Auditor distributed the fund to the payment of all the taxes, which with the expenses of the audit, exhausted the fund.

Anspach & Stanton filed exceptions to this distribution, which the court dismissed, confirmed the report of the Auditor and directed that the fund be distributed in accordance with the report.

They thereupon took this appeal assigning for error the said decree of the court.

*George B. Lindsay*, for appellants.

1. The preferred lien of taxes on real estate is only obtained by statutory enactment: Briggs's Appeal, 38 Leg. Int., 202; Cox v. Grant, 1 Yates, 164; Smith v. McGrew, 4 W. & S.,

338.  And the Act of 1824, as it applied to Delaware county, having been repealed by the Act of 1873, it is only under the provisions of the latter Act that taxes can be a preferred lien upon real estate here.

2.  The personal estate is primarily liable for the payment of taxes, and that it was the duty of the collector to obtain the taxes from that source : Cox *v.* Grant, 1 Yates, 164 ; Act of April 1st, 1873, §§ 2 and 5 P. L., 509.  And the personal property, thus primarily liable, having been converted into money by the assignee and still held by him for those who are entitled to it, these claims for taxes should be presented there.

3.  The lien for city tax for 1882 having been filed August 27th, 1883, instead of the preceding January, as required by the Act, and showing on its face that notice of the intention to file a lien was not given to the owners of the real estate by service at their residence, but was simply served on one, H. C. Eyre, it is fatally defective.

4.  That the lien for city tax of 1882 being defective, and no liens having been filed for the rest of the taxes for 1882, their lien under the Act of 1873 expired in a year after the date of their assessment.

5.  That the taxes of 1883, though their lien under the Act of 1873 had not expired at the time of the sheriff's sale, are primarily collectible out of the personal estate, the proceeds of which is in the hands of the assignee for distribution.

6.  And that the whole fund in court less the proper expense should be awarded to the plaintiffs in the execution.

*Orlando Harvey* and *John B. Hinkson,* for appellees.—The Act of 1873 does not repeal the older Act in express terms.  It provides that any Act inconsistent with its provisions shall be repealed.  Therefore, nothing in the Act of 1824 which can be consistently read with the Act of 1873 is repealed.  The two Acts must be read together as if they were one Act, if this can possibly be done : Pennock *v.* Hoover, 5 Rawle, 317 ; Jefferson Co. *v.* Reitz, 6 P. F. S., 44.

The later statute may be absolutely repugnant to the former in some part and both still stand, for in that case the older statute is repealed only so far as the repugnancy extends, and all the remainder is left in force : In re Barber, 5 Norris, 392.

The first section of the Act of 1873 was intended to protect *bona fide* purchasers without notice from all taxes due over one year, for which claims had not been filed.

The same construction must be given to this Act as was given to the Act of 1798 (Purd. Dig., p. 819, pl. 3,) which provides that no judgment shall continue a lien during a longer term than five years.  This Act has been construed to

[Anspach and Stanton's Appeal.]

be only for the protection of purchasers and subsequent incumbrancers, and saving their interests the lien may be enforced against the debtor and his lands at any time : Aurand's Appeal, 34 Pa., 151 ; Heirs of Hinds *v.* Scott, 11 Pa. St., 19.

If this construction can reasonably be put upon the Act of 1873, it should be done, so that the rights and powers given by the Act of 1824 shall not be destroyed by implication ; for all tax laws are to be liberally construed : 11 W. N. C., 458 ; see South Chester *v.* Harvey, 1 Del. Co. Rep., 209 ; South Chester *v.* Broomall, 1 Id., 58.

The city, county and school taxes for 1883 were undoubtedly a lien upon the lands, by virtue of the first section of the Act of 1873, at the time of the sheriff's sale, December 1st, 1883. By virtue of the said first section of the Act of 1873 they were prior in lien to the Anspach & Stanton mortgage which was executed March 7th, 1881. They were divested by the sheriff's sale, and like all other liens divested by such sales they are payable out of the proceeds, if such proceeds are sufficient to pay them. In this case they were the first lien, after costs, upon the fund raised by the sale.

It should not be overlooked that all laws which have for their objects the collection of the public revenue and the maintenance of the public credit, should have a liberal construction. See cases cited in South Chester *v.* Broomall, *supra.* Subsequent legislation is for the very purpose of remedying defects in former Acts and making the lien and collection of taxes more certain.

Mr. Justice CLARK delivered the opinion of the Court, March 1st, 1886.

The special Act of 1st April, 1873, relating to the lien of taxes in the county of Delaware provides, in its last section, that so much of any Act of Assembly as is inconsistent therewith is thereby repealed. The prior Act of 3d February, 1824, which was afterwards extended to the county of Delaware, relates to the same matter, and in its 1st section provides that all taxes lawfully imposed, for any purpose, on real estate, shall be a lien thereon, which lien shall have priority to, and " shall be fully paid and satisfied before, any recognizance, mortgage, judgment, debt, obligation or responsibility," with which the said real estate may become charged, or to which it may become liable, from and after the passage of that Act. The lien created under this Act of 1824, it will be observed, takes effect at the date of the assessment, is indefinite in its duration, and can be discharged only by payment. The 1st section of the Act of 1st April, 1873, first above referred to, is identical in form, but limits the lien there created

to " a period of one year from the time said taxes, rates and levies are imposed and assessed," unless within that period a claim or formal lien shall be entered, in the manner directed, in the office of the Prothonotary of the Court of Common Pleas of the county.

In respect of the limitation of the lien of the assessment, these statutes are clearly and obviously inconsistent. It may be conceded that many of the provisions of the Act of 1873 are merely re-enactments, declaratory of the Act of 1824, and that others, which are new, are in no way in conflict with the provisions of the earlier statute, but it is certain that in whatever respect the Act of 1824 is inconsistent with the Act of 1873, the former must yield to the latter. The provision for a lien without limit is certainly inconsistent with that for a lien for one year only, for if by the direction of the 1st section of the Act of 1873 the assessment is declared to be a lien for a year only, that necessarily precludes the existence of the lien for any longer period, or for an indefinite time ; statutory provisions so irreconcilable cannot stand together. Nor do we favor the construction that the lien, in analogy to that of a judgment, was intended to be indefinite as respects the tax debtor, and limited to one year as to *bona fide* purchasers and mortgagees. If such was the intention of the legislature we would certainly expect to find in the body of the statute some manifestation of it, which would put the question beyond the merest conjecture.

We are not called upon in this case to decide whether or not the Act of 1873 is a substitute for and fully supplies the Act of 1824, and whether the latter statute is thereby repealed by implication ; it is sufficient, for the purposes of this case, for us to say, that so much of the Act of 1824, or of any other Acts, as is inconsistent with the Act of 1873, is thereby repealed.

The requirements of the Act of 1824, as to the registering of the taxes in the office of the County Commissioners, have been held to be directory only; failure to register did not affect the validity of the unlimited lien which was thereby provided : Parker's Appeal, 8 W. & S., 449 ; Wallace's Estate, 9 P. F. S., 401. The Act of 1873, however, provides that the taxes shall be liens for the period of one year from the time of the assessment, " and when entered " on the docket, as directed, in the Court of Common Pleas, shall " continue " liens as the judgments of the said court, and shall be collectible by execution. The continuance of the lien depends upon the performance of the conditions recited in the Act; the requirement is therefore mandatory. The entry in the Prothonotary's office must be made upon the

proper official return, made in the manner and at the time indicated, certainly before the lien of the assessment expires.

H. C. Eyre & Co., after their purchase on 7th March, 1871, used the property in their business, as iron founders and machinists, until June, 1883, when they made an assignment for creditors. The mortgage of Anspach & Stanton, when it was given, was the only lien on the land, excepting that of a prior mortgage. In November, 1883, judgment was obtained on this mortgage, by *scire facias*, and upon a *levari facias* the property was sold for $500; this sum, having been paid into court, and an Auditor appointed to make distribution, claims were presented for taxes, assessed and remaining unpaid, as follows: School, 19th June, 1882, $84.83; city, 19th June, 1882, $100; county, 7th March, 1883, $35.35; city, 2d April, 1883, $101; school, 15th June, 1883, $40.40. There was at all times, prior to the sale by the assignee for creditors, abundant personal property on the premises, from which these taxes might have been made. The only claim or formal lien which was afterwards entered was for the city taxes of 1882 (assessed on the 19th June of that year), but as it was not entered until the 27th August, 1883, the lien was lost, and the entry was of no avail. The school and city taxes for 1882 are not, therefore, entitled to participate in the fund for distribution.

The taxes for 1883, however, were at the time of the sheriff's sale still subsisting liens against the property, and as the sale of the premises was upon the mortgage itself, and the proceeds are sufficient to pay and discharge the taxes, not only the lien of the mortgage but the lien of the taxes also, under the provisions of the Act of 1873, are divested, and are entitled to come upon the fund arising from the sale. It is of no consequence, we think, that there had been personal property on the premises, out of which the collector might have levied the taxes. It was, of course, the duty of the collector, if he desired to be released from responsibility for these several assessments, to be diligent in his endeavors, prior to making his return, to collect the taxes from any personal property which he might know, or by reasonable diligence could have known, to be on the premises, but the lien of the assessment cannot be defeated by the neglect and want of diligence of the collector; what would be the effect of a return, false in this respect, upon the claim filed thereon, in continuance of the lien, is a question not involved in the case.

In what has been said we must be understood as referring to " taxes " in a somewhat restricted sense, as in a former decision of this court, Harvey *v.* Borough of South Chester, 11 W. N. C., 458, we held, that the Act of 1873 has special reference to taxes in the strict sense of the word, and makes

provision for registering and collecting the same, and · that it has no application to municipal claims or assessments, which were. made liens, entitled to priority of payment by prior Acts of Assembly.

We are of opinion, therefore, that the taxes for 1883 have priority to, and should be fully paid and satisfied before the mortgage, and must be allowed in full in this distribution.

The decree of the Court of Common Pleas is reversed, and the record is remitted, in order that distribution may be made in accordance with this opinion; the appellees to pay the costs of this appeal.