# Martin, Appellant, *v.* Greenwood.

*Statutes—Repeal—Municipal lien—Mortgage—Acts of March 22, 1869, P. L. 482, and June 4, 1901, P. L. 364.*

The Act of June 4, 1901, P. L. 364, relating to municipal liens repeals the special Act of March 22, 1869, P. L. 482, relating to the filing of municipal liens in the city of Chester.

*Municipal liens—Mortgages—Priority of lien—Act of June 4, 1901, P. L. 364.*

Under the Act of June 4, 1901, P. L. 364, municipal liens have no priority over mortgages created prior to the passage of the act.

An act of assembly will not be held as retroactive unless the language used clearly requires such construction.

Argued Nov. 23, 1904.   Appeal, No. 185, Oct. T., 1904, by plaintiff, from order of C. P. Del. Co., March T., 103, No. 68, distributing fund in case of Howard L. Martin v. Samuel Greenwood.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Scire facias sur mortgage.   Before JOHNSON, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order distributing the whole fund amounting to $157.85 to the city of Chester on a municipal lien of March Term, 1902, No. 339, instead of to H. L. Martin whose mortgage was executed on May 1, 1893, and duly recorded.

*Albert Dutton MacDade,* for appellant.—The mortgage has priority : Lukens v. Katz, 27 Pa. C. C. Rep. 596 ; Richmond v. Bennett, 205 Pa. 470 ; Chester School Dist. v. Hunter's Est., 12 Pa. Dist. Rep. 627 ; Williams's Est., 13 Pa. Dist.

Rep. 596; Bunn v. Gorgas, 41 Pa. 441; White Haven Borough v. Water Co., 209 Pa. 166; Meadville City v. Mahoney, 28 Pa. C. C. Rep. 474; South Chester v. Broomall, 1 Del. Co. Rep. 58.

*A. A. Cochran*, for appellee.—The mortgage is postponed to the municipal lien: Anspach & Stanton's App., 112 Pa. 27; Fidelity Ins. Trust, etc., Co. v. Byrnes, 6 Del. Co. Rep. 146; Haus's Est., 2 Pa. Dist. Rep. 88; Ancona v. Becker, 14 Pa. C. C. Rep. 73; Titusville City's App., 108 Pa. 600; Smith v. Meadow Brook Brewing Co., 3 Lack. Jur. 145; City of Chester School Dist. v. Hunter, 8 Del. Co. Rep. 582; Provident Saving Institute v. Jersey City, 113 U. S. 506 (5 Sup. Ct. Repr. 612); Warren v. Sohn, 112 Ind. 213 (13 N. E. Repr. 863); Hand v. Startup, 38 N. J. Eq. 115; State v. Aetna Life Ins. Co., 117 Ind. 251 (20 N. E. Repr. 144).

OPINION BY MORRISON, J., January 17, 1905:

Howard L. Martin, the appellant, held a mortgage against Samuel Greenwood, the appellee, dated May 1, 1893, and recorded in Delaware county September 22, 1893. It was a first lien on a lot of land on the north side of Eighteenth street in the city of Chester. On foreclosure proceedings and judgment this lot was sold on a levari facias and purchased by the appellee for $350, on August 1, 1903. The lot sold was fifty feet front on Eighteenth street. The contest giving rise to this appeal is between the mortgagee and the city of Chester on a paving lien against the land so sold, in the name of the city against Samuel Greenwood. The lien was entered of record March 25, 1902, for $294.61 of which $163.11, it is conceded, was chargeable against the said lot, if the lien was correctly prepared and filed.

It is argued that this lien can be given priority over the former mortgage under the Act of March 22, 1869, P. L. 482. This act gives priority to a municipal lien over any mortgage created after said act went into effect. In section 2 we find: "That all municipal liens of any description whatever, hereafter filed by the city of Chester, or by contractors in the name of said city, as provided in Section 3 of this act, shall have priority of lien upon the property against which the same may

be filed, before any mortgage, judgment, recognisance or any encumbrance whatever, created after the passage of this act."

This act discloses no legislative intent to give municipal liens priority over mortgage, etc., entered prior to its passage. Counsel for the appellant concedes that if this act were in force it would give the municipal lien priority over the mortgage, provided it is a valid lien and properly entered. But he argues that this act and all other general, local and special acts in regard to this subject were repealed by the Act of June 4, 1901, P. L. 364. In our opinion this position is well taken. The last paragraph of that act reads: "And all other acts or parts of acts of Assembly of this commonwealth, general, special or local, appertaining to the subject-matter covered by this act, be and the same are hereby repealed: it being intended that this act shall furnish a complete and exclusive system in itself, so far as relates to the practice and procedure for the filing, collection and extent of tax and municipal claims, the right to file which accrued after the approval of this act."

Considering the title, scope and purpose of the act and the repealing section, we consider it idle to argue that a municipal lien, which arose after the approval of this act, can be filed and sustained under the act of 1869, the Chester county act of 1873, or any other act of assembly but that of June 4, 1901.

This view brings us to a consideration of that act and its effect upon the contention in the present case. The third section of the act reads: "All municipal claims which may hereafter be lawfully imposed or assessed on any property in this commonwealth, in the manner and to the extent as hereinafter set forth, shall be and they are hereby declared to be a lien on said property, together with all charges, expenses and fees added thereto for failure to pay promptly, and said liens shall have priority to, and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any other obligation, judgment, claim, lien or estate with which the said property may become charged, or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property."

In our opinion this section of the act fails to show a legislative intent to make municipal liens have priority over record

liens which were created prior to the passage of the act.    The language is: "and said liens shall have priority to, and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any other obligation, judgment, claim, lien or estate with which said property may become charged or for which it may become liable."    The difference between this and the language of the act of 1869, supra, is that the latter is "created after the passage of this act."    But we think both acts on this question have practically the same meaning.    It seems to us clear that this means prior to obligation, judgments, etc., created after the passage of the act.    Entertaining this view we are relieved of the consideration of the question of the power of the legislature in 1901 to enact that a municipal lien, created thereafter, should have priority over a mortgage lien which had existed since September 22, 1893.    Whatever fine technical construction may be placed upon the meaning of this third section, we are clear that the popular and general understanding of the persons to be affected by it would be that already indicated in this opinion.

The Act of February 3, 1824, P. L. 18, relating to the lien of taxes, extended by Act of April 18, 1843, P. L. 332, to Delaware county, provides : " That all taxes lawfully imposed, for any purpose, on real estate, shall be a lien thereon, which lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility, with which the said real estate may become charged, or to which it may become liable, from and after the passage of this Act."

In Anspach and Stanton's Appeal, 112 Pa. 27, this act and the Act of April 1, 1873, P. L. 509, were considered by the Supreme Court, and the decision was that a prior mortgage will be postponed to the payment of taxes assessed on the mortgaged premises subsequently to the mortgage.    But the mortgage in question was created long after the passage of the acts of 1824 and 1873, and under the plain terms of the law the taxes were entitled to priority.

In Appeal of the City of Titusville, 108 Pa. 600, it was held that taxes subsequently assessed were entitled to priority over a mortgage recorded May 31, 1882, but these taxes were given priority by the acts of 1874 and 1875, which went into effect

long prior to the execution of the mortgage. Eaton's Appeal, 83 Pa. 152, is to the same effect. . There the judgments were obtained prior to the levy of the taxes but after the passage of the act of 1866, which gave the taxes priority.

The learned court below in his opinion refers to the thirty-second section of the act of 1901 and also to the thirty-third, and argues that legislative intent is to give priority to tax and municipal liens over mortgages and other liens which existed prior to the passage of the act. But we think there is nothing in these sections nor in any other part of the act sufficient to sustain the contention that the municipal lien in question had priority over the mortgage.

We do not find any assignment of error raising the question as to whether the sale on the mortgage divested the municipal lien, on the theory that the proceeds of the sale must first be applied to the mortgage. This question is raised for the purpose of argument by the court below, but we do not now decide it.

We discover nothing in the act of 1901, supra, indicating a legislative intent to make it retroactive. The language is " with which the said property may become charged or for which it may become liable." " May become " refers to the future, and must be construed to have the same force and effect as if the words " from and after the passage of this act " had been added.

The intent is clear to make future claims liens and only liens as against other future incumbrances, and this construction avoids any disturbance or any interference with a lien which had attached prior to the passage of the act.

The forty-first section of the act reads : " This act shall apply only to claims wherein the right to file a lien after the date of its approval ; but the rights of other claimants, under existing laws, shall remain unaffected by its passage, and all claims properly filed thereunder are hereby validated."

Upon the question of whether or not an act of assembly is to be construed as retroactive, we find many cases in the books, and the current of decision is almost uniform that an act of assembly shall not be held as retroactive unless the language used clearly requires such construction. In White v. Crawford, 84 Pa. 433, the Supreme Court said (p. 436) : " In De-

wart v. Purdy, 29 Pa. 113, it was said that nothing but the most indubitable phraseology will induce this court to hold that the legislature intended an enactment to have any other than a prospective operation. With fully equal reason we shall hold that the legislature did not intend to change the terms of an existing contract, unless the act expressed such intention in clear language."

" Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, must be presumed, out of respect to the legislature, to be intended not to have a retrospective operation." Endlich on Interpretation of Statutes, p. 367.

In Calder v. Bull, 3 Dallas, 386, the Supreme Court said (p. 391) : " Every law that takes away, or impairs rights vested, agreeably to existing laws, is retrospective, and is generally unjust, and may be oppressive ; and it is a good general rule, that a law should have no retrospect : but there are cases in which laws may justly, and for the benefit of the community, and also of individuals, relate to a time antecedent to their commencement: as statutes of oblivion or of pardon."

In Taylor v. Mitchell, 57 Pa. 209, SHARSWOOD, J., said (p. 211): " There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively, and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature : " citing authorities. See Sproul v. Standard Plate Glass Co., 201 Pa. 103 ; Commonwealth v. Danville Bessemer Co., 207 Pa. 302 ; Ihmsen v. Navigation Co., 32 Pa. 153. In the latter case the Supreme Court (p. 156) said: " The ' Company shall not hereafter be liable for damages which may be done ' is certainly not the same thing as if it had been said that the company shall not hereafter be liable for damages which may have been done."

We have found no decision of the Supreme or Superior Court construing the act of June 4, 1901, but in Lükens v. Katz, 27 C. C. Rep. 596, Judge WEAND holds : " The intent was to make future taxes liens, and only liens as against other future encumbrances, thus avoiding any question as to the disturbance

or interference with a lien which had attached prior to the passage of the act." That case was in regard to taxes but the principle applies to a municipal lien.

In Gormley's Appeal, 27 Pa. 49, BLACK, J., said (p. 51): "These taxes were a lien, but so was the mortgage. Liens are to be paid according to their priority and the mortgage is several years older than the taxes. The legislature might give a lien for taxes a preference to all others; but this has not been done."

Let it be conceded, for the argument's sake, that the legislature has power to make taxes and municipal liens prior to all others liens existing before the passage of the act, yet this will not affect our conclusion. We rest this decision on the ground already stated, that the legislature did not intend by the act of 1901 to give taxes and municipal liens priority over liens which existed prior to the passage of the act.

We are constrained to hold that the learned court erred in distributing the proceeds of the mortgage sale to the municipal lien. This view renders it unnecessary for us to consider the validity of the lien raised by the first and second assignments. The third, fourth and fifth assignments are sustained and the judgment or decree of the court is reversed at the costs of the appellee; and it is ordered that the record be remitted to the court below with instructions to distribute the money to the appellant in accordance with this opinion. Costs of this appeal to be paid by the appellee.

PORTER, J., dissents.