## Fisher *versus* Connard.

1. In the absence of any special local Act, a sheriff's sale of real estate under a junior incumbrance will divest the lien of a prior mortgage, where there is any tax, charge, assessment or municipal claim remaining unpaid, which has been duly entered prior to the recording of the mortgage.

2. The Act of March 23rd 1867, § 3 (Pamph. L. 43), was intended to prevent the divestiture of the lien of a mortgage by a sheriff's sale, under a junior incumbrance, both where a municipal claim has been filed, which, though accruing subsequent to the mortgage, has by law priority given it; and also where any taxes, charges or assessments have been filed, which accrued subsequent to the mortgage, and have by law like priority given them. It was not, however, intended to prevent the divestiture of the lien of a mortgage by a sheriff's sale under a junior encumbrance, where taxes, charges, assessments or municipal liens had accrued, and claims therefor had been filed prior to the recording of the mortgage.

3. Rhein Building Association *v.* Lea, post, p. 210, distinguished.

4. The law relative to the discharge of mortgages by sales under junior encumbrances, where taxes, charges, assessments or municipal claims have been filed, reviewed and explained.

March 2nd 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Berks county :* Of July Term 1881, No. 45.

Scire facias sur mortgage, by Henry Connard, Jr., and Henry H. Jackson, executors of the will of Thomas Jackson,

[Fisher *v.* Connard.]

deceased, against Daniel B. Fisher, with notice to David B. Fisher, terre-tenant. Plea, payment with leave, &c., set-off.

The facts were as follows:—In May 1877, Daniel B. Fisher was the owner of certain premises in the city of Reading. On May 29th 1877, the city solicitor of Reading filed in the office of the prothonotary of Berks county, to No. 151, May term 1877, a municipal claim against said premises, and Daniel B. Fisher owner, &c., for "city tax for 1876, $39.94, survey twenty-five cents, = $40.19"; the claim reciting that it was filed by virtue of the Act of May 23d 1874, Pamph. L. 242. Section 20, clause 33, of said Act provides that taxes levied in pursuance thereof "shall be a lien on such real estate from the time of such levy, and the lien hereby created shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, debt, obligation or responsibility which the said real estate may become charged with or liable to, from and after the passage of this Act." Section 36 of said Act provides: "After the first day of January in each and every year . . . . the city solicitor shall cause the said taxes upon real estate remaining unpaid to be registered in the name of the city, and in the office of the prothonotary of the proper county, who shall keep a separate book for that purpose to be called the City Lien Docket; and all taxes so registered shall be and continue to be liens, from the date of the levy thereof, on the real estate upon which they have been assessed, for the term of five years."

The claim in question was accordingly registered in the City Lien Docket May 29th 1877.

On June 1st 1877, the said Daniel B. Fisher executed a mortgage on the said premises to Thomas Jackson, for $2,000,— recorded June 9th 1877. Thomas Jackson afterwards died, having appointed the said plaintiffs, Henry Connard, Jr., and Henry H. Jackson, to be his executors.

On November 3d 1879, one David B. Fisher recovered a judgment for $3,308.28 against the said Daniel B. Fisher, on which he issued a fi. fa. and vend. ex. under which the said premises were sold at sheriff's sale, December 13th 1879, and were purchased by the plaintiff in the execution, the said David B. Fisher, for $40. Other real estate of the defendant was also sold at the same time under said execution. In the distribution of the fund arising from said sale the court awarded to the "city of Reading, 151, May T. 1877, city lien, on account, $40."

On March 24th 1880, the said Henry Connard, Jr., and Henry H. Jackson, executors of Thomas Jackson, deceased, issued this scire facias on the aforesaid mortgage.

On the trial, before SASSAMAN, P. J., the said terre-tenant, David B. Fisher, claimed that the lien of the mortgage was divested by the said sheriff's sale, by reason of the existence of

[Fisher v. Connard.]

the said municipal claim for taxes which had been filed and registered prior to the date of said mortgage ; and in support of this defence he offered in evidence the records of said municipal claim, and of said judgment, execution and sheriff's sale.

Plaintiffs made the following objections to the offer :

1. Under the Acts of Assembly the lien of a mortgage is not discharged by a sale on a junior judgment because of a lien for taxes prior to the mortgage.

2. Because, as the tax lien was not discharged by the sheriff's sale, the mortgage in suit was not discharged

BY THE COURT. From the admitted facts in the argument of his offer it appears that the lien in favor of the City of Reading v. Daniel B. Fisher, 151 May Term, 1877, is a city tax lien under our municipal legislation, which, for the puposes of this trial, we will hold to be comprehended under the provisions of the general Act of Assembly approved 23d March, 1867, and which is in extension of the exceptions to the exceptions contained in the Act of 6th April 1830, for the preservation of the liens of mortgages prior to other liens. The offer is rejected, and bill sealed for defendants.

The said Act of March 23d 1867, Pamph. L. 44, provides as follows :

" When the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property except other mortgages ground rents purchase money due to the commonwealth taxes charges assessments and municipal claims whose lien though afterwards accruing has by law priority given it the lien of such mortgage shall not be destroyed or in any way affected by any judicial or other sale whatsoever whether such judicial sale shall be made by virtue or authority of any order or decree of any Orphans' or other Court or any writ of execution or otherwise howsoever."

The jury found a verdict for the plaintiffs, for $1,666.95, and judgment was entered thereon. The defendant thereupon took this writ of error, assigning for error the rejection of his offer as above.

*Frank R. Schell* (*J. H. Jacobs* and *B. Y. Shearer* with him), for the plaintiff in error.—The question for determination depends on the construction to be given to the general Act of March 23d 1867. Does that Act protect the lien of a mortgage from being discharged by a judicial sale under a junior incumbrance, where such mortgage is subsequent in date to a tax claim duly filed and registered in the office of the prothonotary of the county ? We say no—that the object and effect of the Act is to

4 OUTERBRIDGE.—5

protect a mortgage against a tax, charge or municipal claim, which though accruing after the date of the mortgage was entitled by law to priority.    Where the tax is assessed and the claim is filed and registered prior to the mortgage, the mortgagee can protect himself in the first instance by a search in the prothonotary's office, where it is indexed on the judgment index.    The contention on the other side is that the Act places mortgages which are prior to all other liens except " taxes " on the same plane with mortgages prior to all other liens except " other mortgages, ground rents, and purchase money due the Commonwealth."    To reach this result, they argue that the words of the Act " whose lien, though afterwards accruing, has by law priority given it " relate only to the one immediately antecedent term, " municipal claims."    We say that those words relate to the immediately antecedent class, " taxes, charges, assessments and municipal claims."

This Act is to be read in relation to preceding legislation, the mischief and the remedy.   In numerous preceding Acts the words " taxes, charges and municipal claims " are joined as a class, followed by the word " lien " relating to the class.    See Acts of Feb. 3d 1824, P. L. 192 ; April 5th 1844 (Allegheny county), P. L. 199 ; April 16th 1845 § 41, P. L. 488 ; March 11th 1846, § 3, P. L. 115 ; January 23d 1849, § 4, P. L. 686 ; May 13th 1856, § 11, P. L. 569 ; Duffy *v.* City, 6 Wright, 192.

·Prior to 1830, all mortgages were discharged by judicial sales under subsequent incumbrances.   By the general Act of that year the lien was preserved of mortgages " prior to all other liens except other mortgages, ground rents and the purchase money, due to the Commonwealth."   This Act failed to protect mortgages where there was a lien for taxes subsequently assessed but entitled to priority by Act of February 3d 1824, P. L. 192—of which the Act of 1874, under which the tax lien was filed in this case, is almost a literal transcript.    This evil was first remedied in Philadelphia by the special Act of April 11th 1835, P. L. 190, subsequently extended to Allegheny county.   But the citizens in other counties were without remedy until the Act of 1867. During all this time no evil existed from cases where the tax was a public registered incumbrance prior to the mortgage, but the trouble was where a subsequently accruing tax by force of law became a prior lien.   The only object of the acts giving priority to taxes was payment.   The Act of 1867, while not postponing taxes as first liens in the distribution, prevents the divesting of mortgages by retroactive tax liens.   The tax in this case was paid out of the proceeds of the sheriff's sale (except 19 cents), and it is settled law that a lien which so participates is discharged by the sale, and thereby divests all subsequent liens.

*Jeff. Synder* (*Geo. F. Baer* with him), for the defendants in error.—It is a rule of syntax, that where a relative has two or more nouns preceding it to which it may apply, its application must be confined to the last. Particularly is this so when the relative cannot possibly refer to all, and if it is applied to more than the last we are dependent on voluntary selection. Thus, when the Act says " other mortgages, ground rents, purchase-money due to the Commonwealth, taxes, charges, assessments, and municipal claims whose lien," &c., the relative " whose lien," &c., cannot sensibly apply to " other mortgages, or ground rents, or purchase-money due the Commonwealth." It must apply to " municipal claims." It may or may not apply, sensibly, to " taxes, charges, assessments." But these are classed in the sentence with the preceding words ; there is no "and" between the words " Commonwealth" and " taxes." Grammatically, therefore, as well as logically and legally, we contend that the manifest purpose of the Act was to enlarge the list of incumbrances which might precede a mortgage without divesting its lien in case of a judicial sale. It placed " taxes," &c., upon the same plane with " other mortgages," &c. Otherwise the act would in many cases fail of its alleged object, for in Reading taxes are a lien from date of levy, viz., on or before June 1st, and the lien is not registered until after the 1st of January following. In the meantime an inspection of the record will not enable a mortgagee to discover the lien, yet, under the construction contended for on the other side, a mortgage given after the lien, *i. e.*, the levy, attaches, and before registration, will be discharged by a sale under a junior incumbrance. Even if the relative clause relates to " taxes, charges and assessments, " as well as to municipal claims, its function is not to specify the circumstances under which a claim may be a prior lien and yet save the lien of a mortgage, but it is to designate and set apart the class of claims that is to have the same effect upon mortgages that ground rents, &c., have had since 1830, without regard to the time such claim accrued, whether before or after the recording of the mortgage.

Mr. Justice Paxson delivered the opinion of the Court, April 24th 1882.

The mortgage in suit was recorded on the 9th day of June 1877. On the 29th day of May 1877, the city of Reading filed a lien against the mortgaged premises for city taxes, amounting to $40.19. On the same day a lien was filed against the same premises, by the Reading School District, for school-tax, amounting to $20.19. Each of these liens, as will be noticed, antedates the mortgage. During the year 1879, while the record stood in this condition, the mortgaged premises were sold by the

sheriff, upon a junior judgment, to the mortgagor himself, for the sum of $40, and the purchase money was applied to the tax lien of the city of Reading, above referred to. Subsequently a scire facias was issued upon the mortgage, and the only question raised upon the trial below was, whether the sheriff's sale discharged the lien of the mortgage, by reason of the prior registered liens for taxes. The learned judge held that the mortgage was protected by the Act of 23d November 1867, and this ruling is the only error assigned.

It was held in Willard *v.* Norris, 2 Rawle 56, that when land, subject to a mortgage, is sold under a judgment obtained subsequently to the execution and recording of the mortgage, the purchaser at sheriff's sale, takes the land discharged of the lien of the mortgage. This decision was the occasion of the passage of the Act of 6th April 1830 (P. L. 293), the first section whereof provided that " where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and the purchase money due to the Commonwealth, the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas."

This Act operated to the protection of mortgages in many instances. It failed of its object however, in the county of Philadelphia, for the reason that the Act of 3d of February 1824, declared that all taxes, rates and levies on real estate in said county shall be a lien on said real estate, and the said lien " shall have priority to, and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility which the said real estate may have become charged with, or liable to, from and after the passage of this act. This defect in the Act of 1830 was remedied, so far as Philadelphia is concerned, by the act of 11th April 1835, P. L. 190. In other portions of the state where by law priority was given to tax liens, and to which the act of 1835 had not been extended, the same trouble existed, and there was the same insecurity of mortgages. There are other subsequent Acts tending to the repose of mortgages, which are local to the county of Philadelphia, and to which further reference is unnecessary.

The Act of 23d of March 1867, P. L. 43, is a general law, and was intended, as its title plainly implies, for " the preservation of the lien of mortgages." The third section thereof reads as follows: " When the lien of a mortgage upon real estate is, or shall be prior to all other liens upon the same property, except other mortgages, ground rents, purchase money due to the Commonwealth, taxes, charges, assessments and municipal claims, whose lien, though afterwards accruing has by law priority

[Fisher *v.* Connard.]

given it, the lien of such mortgage shall not be destroyed, or in any way affected by any judicial or other sale whatsoever, whether such judicial sale shall be made by virtue or authority of any order, or decree of any Orphans' or other court, or any writ of execution, or otherwise howsoever: *Provided*, that this section shall not apply to cases of mortgages upon unseated lands, or sales of same for taxes."

It will be noticed that so far as regards the prior liens of " mortgages, ground rents and purchase money due to the commonwealth " this act does not extend the provisions of the Act of 1830, excepting that it applies to all judicial sales including those ordered by the Orphan's Court. It introduces however, into the general law of the state, another class of liens from which the lien of mortgages is protected, viz: " taxes, charges, assessments and municipal claims, whose lien though afterwards accruing, has by law priority given it," and the apparent difficulty in the case consists in the proper construction of this last clause. It was argued with much learning and ability by the counsel for the defendant in error that the proper antecedent of the word " lien" is " municipal claims," and that it is to such claims only that the words " whose lien though afterwards accruing has by law priority given it," applies. The effect of this construction, if adopted, would be to lift " taxes, charges and assessments" out of the operation of the subsequent qualification, and place them upon the same plane with prior " mortgages, ground rents, and purchase money due to the commonwealth." The grammatical construction of a statute is one mode of interpretation. But it is not the only mode, and it is not always the true mode. We may assume that the draftsman of an Act understood the rules of grammar, but it is not always safe to do so. The Act of 1867 was evidently passed with reference to preceding Acts in regard to taxes. In many of these Acts the words " taxes, charges, assessments and municipal claims" had been used together, and in connection with the word " lien." This was so in the Philadelphia Act of 16th of April 1845, P. L. 488, of 23d of January 1849, P. L. 686, and the Allegheny Act of 5th April 1844. P. L. 199. Our best judgment is that " taxes, charges, assessments and municipal claims" in the Act of 1867, were all intended as antecedents of the word " lien," and if this makes good law, the grammatical construction is not so important.

In this view the manifest object of the Act of 1867 was to protect mortgages from liens subsequently accruing, but which by law have priority given them. The two liens entered before the mortgage in suit do not come within this description. They did not accrue after the recording of the mortgage. They not

[Stephenson *v.* Grim.]

only accrued before, but were entered of record prior to the mortgage.   They were therefore notice to- the mortgagee, and as to them he needed no protection.   He had the knowledge and the means to protect himself.

In the Rhein Building Association *v.* Lea, just decided, we held that the Act of 1867 did not apply.   But that case came up from Philadelphia, and was decided upon local Acts which we held were not repealed by the Act of 1867.

The judgment is reversed and a venire facias de novo awarded.