# Rhein Building Association *versus* Lea, to use, etc.

1. In the city and county of Philadelphia, a sheriff's sale under any junior incumbrance does not divest the lien of a mortgage, even where there has been a claim for taxes registered prior to the recording of the mortgage.

2. The special legislation upon this point reviewed and decided not to have been repealed by implication by the Act of March 23d 1867, Pamph. L. 44.

January 5th 1882 ; Re-argued March 28th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county* : Of January Term 1881, No. 211.

Scire facias sur mortgage, by M. Carey Lea to use of Ann Clark, against Christian Brown. The Rhein Building Association was, upon petition, permitted to intervene as terre-tenant.

The mortgage in suit, for $2,000, was dated March 29th 1877, and recorded April 4th 1877, on premises in the city of Philadelphia.

The affidavit and supplemental affidavit of defence, filed by the secretary of the Rhein Building Association, set forth the following facts :—(1) On January 1st 1876, prior to the date of the mortgage in suit, the unpaid taxes for the year 1875 on the mortgaged premises were registered according to law as a lien against the same, and a municipal claim for said registered taxes was filed June 1st 1881, by the city of Philadelphia, against M. Carey Lea, owner, &c., and Hugh McNellis and B. Irene Carson, registered owners. (2) Christian Brown, the mortgagor, by deed dated June 25th 1877, duly recorded, granted and conveyed said premises, subject to said mortgage, to Hugh McNellis, who by a second mortgage for $2000, dated June 25th 1877, duly recorded, conveyed the same in mortgage to the Rhein Building Association. (3) Under proceeding by scire facias, &c., on this second mortgage, the said premises were sold at sheriffs' sale, July 6th 1880, to the Rhein Building Association, and a sheriffs' deed executed to the association therefor. (4) At the time of said sheriff's sale, the said tax claim for registered taxes for 1875 remained unpaid.

The terre-tenant therefore suggested to the court that the mortgage now in suit was discharged by said sheriff's' sale by reason of the existence of the said unsatisfied claim for taxes for 1875, which had been duly registered prior to the date of said mortgage in suit.

[Rhein Building Association *v.* Lea, to use, &c.]

The court made absolute a rule to show cause why judgment should not be entered for plaintiff, for want of a sufficient affidavit of defence, whereupon the Rhein Building Association, terre-tenant, took this writ of error, assigning for error the entry of judgment for plaintiff.

*Martin H. Stutzbach*, and *E. Coppée Mitchell*, for the plaintiff in error.—Prior to the Act of 1830 all mortgages were discharged by any judicial sale. The Act of that year, though intended to preserve the lien of first mortgages, failed to do so where taxes were a prior lien on the mortgaged premises under the Act of February 3d 1824 (Purd. Dig. 1084). This was remedied in Philadelphia county by the Act of April 11th 1835 (Purd. Dig. 479). The Act of April 16th 1845 (P. L. 488), which extended the protection of mortgages afforded by the Act of 1830 to judicial sales made by virtue of any writ of execution, also first introduced the system of registering taxes. And the Act of January 23d 1849 (P. L. 686), provided that the lien of mortgages should not be divested by judicial sale under a tax claim unless it had been registered prior to the recording of the mortgage. The Consolidation Act of 1854 (P. L. 21), and the Act of April 21st 1858 (P. L. 385) modified the system of registration of taxes, and placed the registered tax lien where formerly the assessed tax lien stood, so far as to discharge the lien of subsequent mortgages by a sale on a lien subsequent to the mortgage: Price on Lim. and Liens, 294; Perry *v.* Brinton, 1 Harris 205 ; Smaltz *v.* Donohugh, 11 W. N. C. 219. The effect of this legislation as to Philadelphia county is, we contend, that where taxes are registered prior to the recording of a mortgage, so that the mortgagee can protect himself by a search of the registry, the lien of the mortgage will be discharged by any judicial sale under a subsequent lien : Smaltz *v.* Donohugh, supra.

Even if this were otherwise, the general Act of March 23d 1867 (P. L. 44), operated to repeal prior inconsistent local acts, and effects the same result as is above contended for. The words of that Act, "whose lien though afterwards accruing has by law priority given to it," refer to the antecedent words "taxes, assessment and charge," as well as to "municipal claims."

*John G. Johnson*, for defendant in error.—Mortgage investments in Philadelphia, have always been favored by legislation. When the Act of 1830 came to be applied here, it was found that under the local tax system a claim for taxes, having priority by virtue of the Act of 1824, might lead to a divestiture of mortgages. The legislature therefore directed by the Act of

1835, that this consequence should not follow from the Act of 1824. Subsequent tax legislation, however, again endangered the liens of mortgages, which were again protected by the Act of 1845, providing that: " The lien of a mortgage upon any real estate in the city or county of Philadelphia, shall not be destroyed or in any way affected by any sale of mortgaged premises under a subsequent judgment (other than one entered upon a claim which was a lien on the premises prior to the recording of such mortgage) by reason of the prior lien of any tax charge or assessment whatsoever ; but the same shall continue as if such prior lien did not exist, when by existing laws the lien of such mortgage would otherwise continue."

Experience developed the possibility of mortgages being divested by sales under judgments for taxes or municipal charges actually existing at the time of their creation, but not easy of discovery by reason of the same not having been registered where they could be found. Having provided for a tax registry by the Act of 1845, the legislators were as prompt as ever to perfect their policy in favor of mortgage investments, a and they enacted, by Act of 23d January, 1849, that the "lien of a mortgage upon any real estate situate in the city or county of Philadelphia shall not be destroyed, or in any way affected, by the sale of the mortgaged premises under or by virtue of any process to enforce the payment of any tax, claim, or assessment whatever, which by existing laws may be a lien on said real estate, unless said sale shall be made on a judgment obtained upon a claim which was duly registered in the proper office, prior to the recording of such mortgage."

The obligation to register taxes was practically removed by the Act of 1854, providing that taxes remaining unpaid on the first day of January shall continue a lien in like manner as if registered ; but the registry was restored by Act of April 21st 1858, when the provision of the Act of 1849, above quoted, again became efficacious. The general Act of 1867 is an enabling and not a restraining Act. It is in line with the general legislative policy to preserve and not to destroy the lien of mortgages, and cannot be construed to repeal by implication any of the prior legislation applicable to Philadelphia, as to the effect of judicial sales on the lien of mortgages. .

Mr. Justice PAXSON delivered the opinion of the court April 24th 1882.

The mortgage of the plaintiff below was recorded April 24th 1877. A lien for the taxes of 1875 had been duly registered January 1st 1876. The mortgaged premises were sold by the sheriff July 6th 1880, under a judgment recovered upon a second mortgage. The single question we are called upon to de-

cide is : Did the sheriff's sale divest the lien of the mortgage recorded April 24th 1877, by reason of the prior lien for registered taxes ?

By the Act of February 3d 1824 (Purd. Dig. 1084), "taxes thereafter assessed shall be a lien . . . . and said lien shall have priority to, and shall be fully paid and satisfied before any mortgage which the real estate may become charged with." . When, therefore, in order to protect the security of first mortgages, it was afterwards, by the Act of April 6th 1830 (P. L. 293), enacted "that when the lien of a mortgage upon real estate is prior to all other liens upon the same property, except other mortgages, ground rents, and the purchase money due the commonwealth, the lien of such mortgage shall not be destroyed, or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas or levari facias "— it was soon discovered that by reason of the lien given to taxes by the Act of 1824, the provision was not effective. It was, therefore, provided by the Act of April 11th 1835 (P. L. 190), "that no lien by virtue of the Act of February 3d 1824, entitled ' An Act relating to taxes on certain real estate in the city of Philadelphia ' shall be construed to be within the meaning of the Act of Assembly of April 6th 1830." The security of the mortgagee was still further extended by the 4th section of the Act of April 16th 1845 (P. L. 488), which provided that the lien of the mortgage should not be affected " by reason of the prior lien of any tax, charge or assessment whatever, but the same shall continue as if such prior lien did not exist, when by existing laws the lien of such mortgage would otherwise continue," excepting, however, in case of a sale upon a judgment entered upon a claim which was a lien on the premises prior to the recording of said mortgage ; and the subsequent Act of January 23d 1849 (P. L. 686), protected the mortgage against such sale for taxes, " unless said sale shall be made under a judgment obtained upon a claim which was duly registered in the proper office prior to the recording of such mortgage."

These Acts make a very simple and intelligent system. The plain object was that the lien of a first mortgage should never be divested by a sheriff's sale, except upon a claim which was duly registered prior to the recording of the mortgage. It was evidently not contemplated that the mere existence of such a registry should have the effect of divesting the lien where the sale was on a subsequent judgment or lien. The mortgagee may rest in perfect security except as against proceedings upon a claim registered before his mortgage was recorded, and of which he had the opportunity to inform himself.

Has this system been changed by subsequent legislation ? Certainly not expressly by any Act of Assembly. Implied re-

peals are not favored: Brown *v.* County Commissioners, 9
Harris 43, and we can see nothing upon which any such impli-
cation can be founded. It may be true that the Consolidation
Act of February 2d 1854, P. L. 21, by declaring that "all taxes
remaining unpaid on the first day of January in each year, shall
continue a lien upon the real estate. upon which they are levied,
in like manner as if registered in the county commissioner's
office, and directing the receiver of taxes to furnish certificates
of all taxes and claims which are liens on real estate, repealed
the registry in the county commissioner's office, but that did
not repeal the Acts of 1835 and 1845, which provided that the
lien of such claim should not affect the lien of a first mortgage.
And when the Act of April 21st 1858, P. L. 385, provided that
a "registry of unpaid taxes on real estate shall be kept in the tax
office, and that the said taxes should be a lien on all real estate,
in accordance with the provisions of the Act of February 3d
1824," we think that it is very plain that the new registry
there provided was simply to take the place of the old registry,
as to all legal effects and consequences.

Was this system, local to Philadelphia, repealed by the
general Act of 23d of March 1867, P. L. 44? The third sec-
tion of said Act declares that "When the lien of a mortgage
upon real estate is, or shall be prior to all other liens upon the
same property, except other mortgages, ground rents, purchase
money due to the commonwealth, taxes, charges assessments
and municipal claims, whose lien though afterwards accruing,
has by law priority given it, the lien of such mortgage shall
not be destroyed, or in any way affected by any judicial or
other sale whatsoever, whether such judicial sale shall be made
by virtue or authority of any order or decree of any Orphans'
or other Court, or of any writ of execution, or otherwise how-
soever," &c.

This Act does not in terms repeal the Act of 1845, or any
other Act of the system of which it forms a part, but it was
contended that inasmuch as it is a general Act and legislates
upon the same subject, there is an implied repeal. But this
mode of repeal, as before observed, is not favored. Until
the present time it does not appear that any lawyer or convey-
ancer in the city of Philadelphia ever supposed that it affected
or was intended to affect, the prior legislation for the protection
of mortgages in that city under which millions of dollars have
been loaned. We cannot believe the legislature intended such
a radical change by mere implication, and it would be dan-
gerous for the judiciary to give the Act of 1867 such a con-
struction.

It follows that the Acts of 1845 and 1849 are in full force.
The result is that a sheriff's sale upon any junior incumbrance

[Bell v. Kennedy.]

does not divest the lien of a mortgage even where there has been a tax duly registered prior to the recording of the mortgage.

This question was not decided in Smaltz v. Donohugh for the tax there was not registered, and it was meant by the opinion to say that even conceding that a registered tax would divest the lien, that essential fact did not appear. It was probably assumed by both sides upon the argument.

Judgment affirmed.