## Capital Stock and Corporate Loans Reports.

*Corporation—First class—Annual report to Auditor General—Corporate loans tax—Acts of June 30, 1885, and May 4, 1927.*

1. Corporations of the first class are exempt from the provisions of the Act of May 4, 1927, P. L. 741, amending section 4 of the Act of June 30, 1885, P. L. 193, relating to the corporate loans tax and requiring the filing of an annual report of indebtedness to the Auditor General, even though such corporations have capital stock and are conducted for profit.

2. The clause "not having capital stock and not conducted for profit," as used in the Act of 1927, does not modify "corporations of the first class," but only "co-operative agricultural associations."

Department of Justice. Opinion to Hon. J. Lord Rigby, Revenue Deputy, Auditor General's Department.

MOYER, Dep. Att'y-Gen., July 14, 1927.—You have recently advised this department by letter that Act No. 385, approved by the Governor on May 4, 1927, which amends section 4 of the Act of June 30, 1885, P. L. 193, as amended, is understood to exempt first class corporations from liability for loans tax upon their indebtedness. You state that said section 4, as now amended, contains the following expression: "That hereafter, *except in the case of corporations of the first class and co-operative agricultural associations not having capital stock and not conducted for profit,* it shall be the duty of the treasurer of each private corporation, etc." (The words in italics cover the amendment to said section 4 as made by said Act No. 385.)

You inquire whether, by this amendment, first class corporations, regardless of whether they have capital stock or are conducted for profit, are exempt from the provisions thereof requiring their treasurer to assess and collect the tax and make annual report of its indebtedness to the Auditor General?

The question which you have propounded calls upon us to determine whether or not the expression used in said amendment, "not having capital stock and not conducted for profit," modifies not only its immediate antecedent, "co-operative agricultural associations," but also modifies the expression "corporations of the first class." The expression in question could modify both antecedents without ambiguity. Furthermore, the words of the amendment are used in no other place in said act, excepting in the title, and in said title identically the same words are used as in the amendment itself. Consequently, we are not assisted by a study of the act as a whole. It is, therefore, necessary to give consideration to rules of construction applicable to cases of this character. Endlich on "Interpretation of Statutes," § 414, says: "The strict rule of grammar would seem to require, as a general thing, a limiting clause, or

phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent."

Various cases are cited in support thereof. However, certain other cases are cited displacing this rule where the manifest object of the enactment in question suggested otherwise. In the case of Fisher *v.* Connard, 100 Pa. 63, although the court admitted that it was correct that, in accordance with grammatical construction, relative and qualifying words and phrases refer solely to the last antecedent, it held the rule would not apply to the act of assembly there in question because of the intention of the legislature indicated by previous acts *in pari materia.* But with respect to the act here under consideration, we find no acts of assembly *in pari materia* which assist in throwing any light on the construction of the words of the amendment.

In 2 Lewis's "Sutherland Statutory Construction" (2nd ed.), § 420, the above rule of construction stated by Endlich, in his work on "Interpretation of Statutes," is also set forth with authorities in support thereof. However, in view of all the authorities, if it is still to be doubted whether said rule is applicable and controls in the construction of the words we are discussing in this case, then we submit, where the act itself as a whole does not assist us in determining the intent of the legislature, the most which can be said, so far as to whether or not the words "not having capital stock and not conducted for profit" modify and qualify the expression "corporations of the first class," is that it is doubtful. If this be true, then we may turn to the history of the act. In so doing, we find that said Act No. 385, as originally introduced in the legislature as House Bill No. 1699, did not, in the amendment, contain the words "co-operative agricultural associations not having capital stock and not conducted for profit," but the amendment contained only the words "except in the case of corporations of the first class." In this form the act passed the House of Representatives. In the Senate, the words "and co-operative agricultural associations not having capital stock and not conducted for profit" were added to the amendment. Thus, it will be noted that it was proposed by this amendment to also exempt certain co-operative agricultural associations. The qualifying words used to characterize these co-operative agricultural associations were "not having capital stock and not conducted for profit." These qualifying words are exactly the same words found in section 2 of the Act of June 12, 1919, P. L. 466, which act provides for the incorporation and regulation of co-operative agricultural associations "not having capital stock and not conducted for profit," and are used in said section, as well as in the title of said act, to modify and qualify the expression "co-operative agricultural associations." Consequently, it can hardly be doubted that the draftsman of the amendment to the bill as it appeared in the Senate used these qualifying words as referring only to co-operative agricultural associations. With this amendment of the Senate, the bill was finally passed by the legislature and approved by the Governor. It would, therefore, appear that the history of the bill in the legislature clearly indicates an intent which supports the construction which would result upon the application of the rule hereinbefore referred to.

In addition, an interpretation of the amendment in question which would construe the aforementioned qualifying words as modifying "corporations of the first class" might lead into a situation that would result in the act being declared unconstitutional. Corporations of the first class not having capital stock and not operated for profit would not be liable to report to the Auditor General and to assess and collect the corporate loans tax, while corporations of the first class having capital stock and operated for profit would be required

to report their indebtedness and assess and collect the tax. We are not deciding that such a classification would be unconstitutional, but a strong doubt would be raised concerning the same. It is unnecessary to cite authorities in support of the doctrine that that construction of a statute should be adopted which will sustain the act, where the language used will permit such interpretation.

In light of the foregoing reasons, you are herewith advised that the words "not having capital stock and not conducted for profit" do not modify and qualify the expression "corporations of the first class," as the same is found in Act No. 385, approved May 4, 1927, which amends section 4 of the Act of June 30, 1885, P. L. 193, as amended, and, therefore, corporations of the first class are exempt from the provisions of the Corporate Loans Tax Act, requiring their treasurer to assess, deduct and return the corporate loans tax and make annual report of the indebtedness of the corporation to the Auditor General.                      From C. P. Addams, Harrisburg, Pa.