## Gordon, Secretary of Banking, v. City of Harrisburg et al.

*Mark T. Milnor*, for petitioner; *Paul G. Smith*, for respondents.

REESE, P. J., ninth judicial district, specially presiding, July 28, 1933.— William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the business and property of the Mechanics Trust Company, of Harrisburg, Pa., has filed his petition under the Act of June 18, 1923, P. L. 840, praying for a declaratory judgment upon the facts hereinafter stated. The petition was served upon all interested parties in accordance with the directions of the court. To the petition an answer was filed by the City of Harrisburg and its city treasurer. From the petition and answer the following pertinent facts appear:

On December 30, 1929, the Harrisburg Mattress Company executed and delivered to E. Bruce Taylor a mortgage in the amount of $30,000 upon its real estate located in the City of Harrisburg. The mortgage was duly recorded on the same date. The mortgagee thereupon assigned the mortgage to the Mechanics Trust Company, which guaranteed the payment of the principal and interest of the bonds secured by the mortgage and executed and delivered its certificates of assignment and guaranty to the persons named in the petition. The Harrisburg Mattress Company, mortgagor and owner of the mortgaged premises, defaulted in the payment of the Harrisburg city tax assessed for the year 1932, amounting to $184. Pursuant to sections 2575-2586 of The Third Class City Law of June 23, 1931, P. L. 932, the treasurer of the City of Harrisburg advertised that, for the purpose of collecting delinquent 1932 city taxes, he would sell at public sale on the first Monday in June 1933 certain real estate located in the City of Harrisburg, including inter alia the premises of the Harrisburg Mattress Company. When the date for the sale arrived it was postponed until the first Monday of December 1933. On October 23, 1931, the petitioner herein took possession of the business and property of the Mechanics Trust Company, and since that date has been and now is proceeding to liquidate the assets of said bank, including inter alia the mortgage of the Harrisburg Mattress Company.

The petitioner contends that the lien of this mortgage, it being a first mortgage upon the premises, will not be discharged and divested by the sale of the

premises for delinquent taxes. The City of Harrisburg and its treasurer on the other hand contend that the sale by the city treasurer for delinquent taxes will discharge the lien of the first mortgage on the expiration of the 2-year redemption period. The petition prays for a declaratory judgment upon the following questions:

1. Whether or not a sale of real estate for delinquent taxes by the city treasurer under The Third Class City Law discharges the lien of a first mortgage.

2. Whether or not a sale of real estate for delinquent taxes by the city treasurer under The Third Class City Law discharges the lien of a first mortgage recorded before such tax was assessed.

3. If the court should answer either one or both of these questions in the affirmative, then whether the lien of a first mortgage is discharged on the date of the sale or at the expiration of the 2-year period of redemption as provided in section 2579 of The Third Class City Law.

The facts in the present proceeding disclose that the mortgage herein was recorded and became a lien upon the premises before the delinquent tax involved was assessed. Therefore we deem it necessary to answer only the second and third questions hereinabove set forth.

Sections 2575-2586 of The Third Class City Law of June 23, 1931, P. L. 932, provide for the collection of delinquent city taxes by public sale by the city treasurer. No reference is made in the foregoing sections to the legal effect of a sale made thereunder upon mortgages or other liens already recorded against the properties which may be sold for the collection of delinquent city taxes.

The Act of May 29, 1931, P. L. 280, authorizes the county treasurer to collect delinquent taxes on seated lands in counties, cities, boroughs, towns, townships, school districts, and poor districts on the return of such delinquent taxes by the tax collectors of the various municipalities to the county commissioners, such return being certified to the county treasurer. Section 9 of the last-mentioned Act of 1931 provides inter alia:

"No sale shall discharge the lien of any mortgage which shall have been recorded before such taxes became liens by return and docketing as herein provided, and which is or shall be prior to all other liens, except other mortgages, ground rents, municipal claims, and/or other taxes, and no such sale shall discharge the lien of any ground rent, municipal claim, or tax remaining unpaid. ... When any real estate is so sold, no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption; but if such real estate is not redeemed, then all liens against the same, except such liens as are hereinbefore specifically saved, shall be deemed to be discharged from the date that the right of redemption expired."

It therefore follows that if the premises involved in the instant proceeding were to be sold by the county treasurer the lien of the mortgage, recorded before the tax became a lien, would not be divested by the county treasurer's tax sale.

The Act of May 16, 1923, P. L. 207, known as the Municipal Lien Act, and its amendments, provide when, how, upon what property, and to what extent liens shall be allowed for taxes and various municipal claims, with the procedure upon claims filed therefor, the methods for preserving such liens and enforcing payment of such claims, the effect of judicial sales of the properties liened, &c. Section 2 of this act provides:

"All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth . . . shall be and they are hereby declared to be a first lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said

property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made."

Section 9 of this act provides that claims for taxes must be filed in the court of common pleas of the county in which the property is situated. Section 15 provides that such claims so filed shall remain a lien upon the properties for 5 years unless revived as provided in the act. Section 28 provides that executions upon any judgment recovered upon any such claims shall be by writ of levari facias directed to the sheriff and that he shall sell the properties at public sale. Section 31 preserves the lien of the mortgage at such judicial sale under certain circumstances. This section provides:

"The lien of a tax or a municipal claim shall not be divested by any judicial sale of the property liened, where the amount due is indefinite or undetermined, or where the same is not due and payable; nor shall the lien of a tax or municipal claim be divested by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; nor, except as hereinafter provided, shall a judicial sale of the property liened, under a judgment obtained on a tax or municipal claim, discharge the lien of any other tax or municipal claim than that upon which said sale is had, except to the extent that the proceeds realized are sufficient for its payment, after paying the costs and expenses of the sale, and of the writ upon which it was made, and any other prior tax or municipal claims to which the fund may first be applicable. On any such sale being made all tax claims shall be paid out of the proceeds thereof; first, the oldest tax having priority; and municipal claims shall be paid next, the oldest in point of lien having priority. Mortgages, ground-rents, and other charges on or estates in the property which were recorded, or created where recording is not required, before any tax other than for the current year accrue, or before the actual doing of the work in front of or upon the particular property for which the municipal claim is filed, shall not be disturbed by such sale unless a prior lien is also discharged thereby. . . ."

If the city treasurer had elected to collect the delinquent tax on the instant proceeding under the provisions of the foregoing act by filing a claim therefor in the office of the prothonotary, reducing the same to judgment, and the issuance of a writ of levari facias thereon, followed by a sale by the sheriff, such sale would not have divested the lien of the mortgage recorded before the assessment of the tax.

Section 2575 of The Third Class City Law of June 23, 1931, P. L. 932, provides: "In addition to other remedies provided for the collection of delinquent city taxes, the city treasurer may sell at public sale, in the manner hereinafter provided, any property upon which the taxes, assessed and levied, have not been paid and have become delinquent." It must be carefully noted that the city treasurer is authorized to sell property for delinquent taxes "in addition to other remedies provided for the collection of delinquent city taxes". It would therefore follow that the city treasurer of a third class city may elect to collect delinquent city taxes by proceeding in any one of the following methods:

1. By filing a claim for the taxes in the office of the prothonotary, reducing the claim to judgment, followed by the issuance of a writ of levari facias thereon, and a public sale by the sheriff under the provisions of the Municipal Lien Act of May 16, 1923, P. L. 207. If this course is adopted, it is true that the claim for taxes is a prior lien as against the lien of a mortgage recorded before the assessment of the tax; but the act provides that the lien of such a mortgage is not divested by the judicial sale upon a judgment entered upon a claim for taxes.

2. By returning the delinquent taxes to the county commissioners and a certification thereof by the commissioners to the county treasurer, followed by a public sale by the county treasurer under the Act of May 29, 1931, P. L. 280. As hereinbefore stated, if the city treasurer had adopted this course, under section 9 of the last mentioned act, the tax sale made by the county treasurer would not divest the lien on the first mortgage herein.

3. By the city treasurer himself selling the premises for the collection of the delinquent tax in the manner provided in sections 2575-2586 of The Third Class City Law of June 23, 1931, P. L. 932. As before stated, this act is silent as to the effect of such a tax sale upon the lien of a mortgage recorded before the assessment of the tax.

If seated land is sold for delinquent taxes either by the sheriff under the Municipal Lien Act or by the county treasurer under the Act of May 29, 1931, P. L. 280, the tax sale in either event would not discharge the lien of a mortgage recorded before the assessment of the tax. It is difficult to see how any different legal effect can be given to a tax sale by the city treasurer himself under The Third Class City Law. To do so would be in effect to hold that the city treasurer, by the very exercise of a discretionary election to sell the land himself for delinquent taxes, could divest the lien of a mortgage recorded before the assessment of the tax. We do not think the legislature had any such intention when it enacted The Third Class City Law. The rights of mortgagees and the safety of mortgage investments require that the same effect be given to a delinquent tax sale by a city treasurer as is expressly given to a sale for delinquent taxes by the sheriff under the Municipal Lien Act, or by the county treasurer under the Act of May 29, 1931, P. L. 280.

It was the policy of the legislature in all of the legislation that finally culminated in the Municipal Lien Act of May 16, 1923, P. L. 207, to make taxes a first lien prior to the lien of a mortgage or any other lien recorded before the assessment of the tax and to provide for the payment of such taxes before the payment of other liens. But we cannot find that it has been the policy of the legislature to enact any legislation which provides that a sale for delinquent taxes divests the lien of a first mortgage recorded before the assessment of the tax. The legislative intent throughout seems to have been not to regard taxes on seated lands as superior liens in point of time, but to regard them as superior or preferred liens in point of payment: Northern Liberties v. Swain, 13 Pa. 113, 115. We have found no act of the legislature and no decision of the courts, nor has the industry of counsel revealed any act or decision, which indicates or intimates that a sale of seated lands for delinquent taxes discharges or diverts the lien of a first mortgage recorded before the assessment of the tax. On the other hand, legislation of the past on the subject of tax sales and tax liens, much of it reënacted by the various statutes which we have cited, seems always to have been interpreted by the courts in such a way that it is held that a sale of seated lands for delinquent taxes does not discharge the lien of a mortgage recorded before the assessment of the tax: Perry v. Brinton, 13 Pa. 202; Cadmus v. Jackson, 52 Pa. 295; Fisher v. Connard, 100 Pa. 63; Rhein Building Ass'n v. Lea, 100 Pa. 210.

Upon examination of the legal effect of the sale of seated lands in the various municipalities for delinquent taxes upon the lien of a mortgage recorded before the assessment of the tax, we find the following. In cities of the first class it has been held that such a tax sale does not divest the lien of such a mortgage: see cases cited in the preceding paragraph. In many municipalities, such as boroughs, townships, school districts, and poor districts, seated land may be sold for delinquent taxes either by the sheriff under the Municipal Lien Act

of 1923 or by the county treasurer under the Act of May 29, 1931, P. L. 280. As we have already seen, either type of tax sale for delinquent taxes in these municipalities would not divest the lien of a mortgage recorded before the assessment of the tax. How can it be said that the legislature in enacting The Third Class City Law intended to give a wholly different effect to a tax sale by a city treasurer?

We feel that further light is shed upon the general legislative intent in connection with the question here involved by the Act of April 30, 1929, P. L. 874, "Relating to judicial sales and sales upon writs of execution or otherwise; and preserving the lien of mortgages on real estate other than upon unseated lands." This act provides:

". . . When the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and purchase money due the commonwealth, and except taxes, municipal claims and assessments, not at the date of said mortgage duly entered as a lien in the office of the prothonotary of the proper county, and except taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it, the lien of such mortgage shall not be destroyed or in anywise affected by any judicial sale, or other sale whatsoever, except as hereinafter stated, whether such sale be made by virtue or authority of any order or decree of any orphans' or other court, or of any writ of execution or otherwise howsoever: Provided, That this section shall not apply to cases of mortgages upon unseated lands, or sales of the same for taxes: Provided, also, That a judicial or other sale in proceedings under a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien . . ."

This act, so far as the present controversy is concerned, is a virtual reënactment of the Act of March 23, 1867, P. L. 43, which, it was held in Fisher v. Connard, 100 Pa. 63, was intended to prevent the divestiture of the lien of a mortgage where taxes, charges, or assessments have been filed which accrued subsequently to the mortgage and have by law a priority given them.

The City of Harrisburg in the present proceeding contends that the city treasurer's sale of property for delinquent city taxes under The Third Class City Law discharges the lien of the first mortgage, recorded before the assessment of the tax, in the discharge of the lien of the first mortgage occurring at the expiration of the 2-year redemption period. Section 2583 of The Third Class City Law of 1931, after providing for objections and exceptions to the city treasurer's sale or disposition thereof by the court and the confirmation of such a sale, provides, inter alia: " . . . and such sale, after the period of redemption shall be terminated, shall be deemed to pass a good and valid title to the purchaser as against the person or persons in whose name such property was sold, provided the purchaser has filed the bond for surplus moneys as hereinafter provided." Relying upon this language, the city contends that the city treasurer's tax sale after the period of redemption passes a good and valid title to the purchaser as against the person or persons in whose name the property was sold and that not only the owner's equity of redemption is sold but the lien of the first mortgage is also divested. In view of what we have already said as to the legislative intent, we do not feel that the language quoted is to be thus construed. We feel that this language, in stating that the purchaser acquires a good and valid title as against the person or persons in whose name such property was sold, cannot be construed to mean that the purchaser acquires a title valid as against the holder of the first mortgage. If the legislature had so intended, it could easily have provided that the purchaser

acquires a good and valid title "free and clear of all encumbrances." This the legislature did in section 31 of the Municipal Lien Act of May 16, 1923, P. L. 207. For the foregoing reasons we enter the following:

### Declaratory judgment

And now, July 28, 1933, it is hereby ordered, adjudged and decreed that the sale of the premises of the Harrisburg Mattress Company, described in the petition filed herein, for delinquent taxes for 1932 by the city treasurer of the City of Harrisburg under The Third Class City Law of June 23, 1931, P. L. 932, will not discharge, either on the date of the said tax sale or at the expiration of the 2-year redemption period, the lien of the first mortgage executed and delivered by said Harrisburg Mattress Company on December 30, 1929, and recorded December 30, 1929, in the recorder's office of Dauphin County in mortgage book X, vol. 18, page 577, said mortgage having been recorded before the assessment of said tax.

From Homer L. Kreider, Harrisburg, Pa.